### BOULWARE et al. v. SINCLAIR PRAIRIE OIL CO. et al.

#### No. 4581.

Court of Civil Appeals of Texas. Beaumont.
March 31, 1949.

Rehearing Denied April 20, 1949.

W. C. McClain, of Conroe, for appellants.

Pitts & Liles and R. A. Powell, all of Conroe, for appellees.

COE, Chief Justice.

This was a suit by one of the appellees, Sinclair Prairie Oil Co., seeking the construction of a will, particularly to determine the power and authority of trustee named in the will to execute an oil and gas lease, now owned by plaintiff, upon certain land now constituting a part of the trust estate created by said will. J. B. Martin, trustee under the will of I. L. Martin, deceased, Narcissa Martin Boulware and husband C. C. Boulware, John W. Martin, I. L. Martin, Jr., Mary Jo Martin, a feme sole, Rose Marie Martin, a feme sole, and Narcissa Martin Boulware, guardian of the estate of Olive Elizabeth Martin, a minor, Cecil C. Boulware, Jr., a minor, and Herbert Martin Boulware, a minor, and all the unborn grandchildren of I. L. Martin, deceased, were made defendants. The trial court appointed W. C. McClain as guardian ad litem for Cecil C. Boulware, Jr., and Hubert Martin Boulware, both minors, and attorney ad litem to represent the unborn grandchildren of I. L. Martin, deceased. The case was tried to the court without a jury upon stipulated facts. The judgment entered construed the language of trust provisions as contained in said will sufficiently broad as to empower the testamentary trustee with authority to execute and deliver an oil and gas lease on the land described in plaintiff's petition, and that all the life tenants and remaindermen were bound by the terms and provisions of said lease so as to vest the appellee Sinclair Prairie Oil Company with a vested leasehold mineral estate. From this judgment the defendants, represented by W. C. McClain under the appointment of the court, being the grandchildren and unborn grandchildren of I. L. Martin, deceased, have prosecuted this appeal.

The appellants contend that the trial court erred in concluding, as a matter of law, that the language of the trust provisions as contained in said will empowered the testamentary trustee with authority to execute and deliver the oil and gas lease in question and that both life tenants and remaindermen were bound by its terms.

On December 10, 1934, I. L. Martin executed and published his last will and testament. The provisions of said will pertinent to the question here presented are as follows:

Subdivision "II. It is my desire that my brother J. B. Martin, shall have the undivided interest which I own in the lands situated in Montgomery County, Texas, belonging to the estate of my father, John Martin, deceased, and also the interest in all land situated in Montgomery County, Texas, that I may hereafter inherit from and through my mother. Should my mother survive me, and if any of my children should inherit an interest in any lands in Montgomery County, Texas, now owned by her from and through her, it is my wish and I hereby request them to convey such interest in such lands to my brother, J. B. Martin.

"III. All of the remainder of my estate which I may own or may be entitled to on the date of my death, of every kind and character, I give, devise annd bequeath to my brother, J. B. Martin, in trust for the use and benefit of my children, Narcissa Martin, John Martin, I. L. Martin, Jr., Mary Jo Martin, Rose Marie Martin, and Olive Elizabeth Martin, during the period of their natural lives. And I do hereby appoint my brother, the said J. B. Martin, Trustee for the purposes above stated, and do hereby authorize and direct him to manage, control, and dispose of said property and devote the revenues and income arising from said property to the support and maintenance of my said children.

"I do hereby fully authorize and empower said trustee to dispose of the livestock and other personal property belonging to my estate as and when it may seem to him to be to the best interest of my estate to do so, and to reinvest the funds derived from same, if such funds are not needed by him for the support and maintenance of my children.

"It is my desire and I hereby direct and empower my said Trustee to keep possession and control of the real estate which I own at the time of my death situated in the Z. Landrum League, the William Rankin League, and the Noah Griffith League during the lives of my children above named, and to use the rents and revenues derived from same for the upkeep of said lands and for the support and benefit of my said children; and, it is my will that my said children shall share equally in such rents and revenues and other income from my estate during their lifetime.

"Should any of my children above named desire to make their home upon the above described lands, it is my desire and I hereby direct said Trustee to permit them to do so and to set aside for their use such part of said property as to him may seem just and equitable, having regard for the rights of such other of my children who may not desire to make their home on said lands, and to permit them to use such part of said property as he may set aside for their use, rent free.

"Should my deceased wife's mother, Mrs. Mary H. Willis, desire to make her home with any of my chidren upon the lands hereinabove mentioned, it is my will, and I here direct said Trustee to permit her to do so, and in such event, to provide for her support and maintenance to the same extent and in the same manner that he has been directed herein to provide for the support and maintenance of my said children.

"It is my will and I here bequeath, when the trust hereinabove created has terminated, the fee simple title to the lands above described to the heirs of the body of my children above named, share and share alike."

I. L. Martin died March 11, 1937, and his will was thereafter duly probated in the probate court of Montgomery County, where he resided at the time of his death. J. B. Martin assumed the duties as trustee under said will and acting under the authority of paragraph 2 of subdivision III sold at least a part of the livestock, to-wit, cattle, belonging to the trust estate and

thereafter on the 11th day of July, 1938, invested a part or all of the proceeds from the sale of the cattle in the tract of land which is covered by the oil and gas leases here in question, such leases having been executed by J. B. Martin, trustee under the will of I. L. Martin, and Narcissa Martin Boulware and husband, C. C. Boulware, John W. Martin, I. L. Martin, Jr., Mary Jo Martin, a feme sole, Rose Marie Martin, a feme sole, and Olive Elizabeth Martin, a minor by guardian being all the children of I. L. Martin, deceased. No oil well had been drilled and there were none in the process of drilling on the lands covered by the lease on the date of the trial of this case.

It is appellants' contention that the words "to manage, control and dispose of said property" as contained in subdivision III of said will should not be construed as granting the trustee the power to sell or execute oil and gas leases upon the real estate belonging to the trust estate. In this connection they call our attention to the provisions of paragraph 3 of subdivision III of said will which contains this provision "It is my desire and I hereby direct and empower my said trustee to keep possession and control of real estate which I own at the time of my death situated in the Z. Landrum League, the William Rankin League, and the Noah Griffith League during the lives of my children above named, and to use the rents and revenues derived from same for the upkeep of said lands and for the support and benefit of my said children; and, it is my will that my said children shall share equally in such rents and revenues and other income from my estate during their lifetime." Appellants contend that the provisions contained in this paragraph negatives the idea that the testator intended that the trustee named in his will should have the authority to sell any portion of the real estate belonging to the trust estate. This contention is supported by able argument which finds support in some of the cases cited. However, we are of the opinion that the authority of the trustee under the will here in question to execute an oil and gas lease upon the land here involved is not controlled by the provisions of the will referred to by appellants and, therefore, it is not necessary for us to determine whether the trustee had authority under paragraph 1 of subdivision III to execute an oil and gas lease covering the land involved in this suit. It must be borne in mind that on the death of the testator he did not own the land covered by the oil and gas lease here in question and that such land was bought by the trustee and paid for from the proceeds of the sale of cattle belonging to the trust estate. The authority of the trustee to so invest the proceeds from the sale of personal property is found in paragraph 2 of subdivision III of said will wherein the testator specifically authorized the trustee to sell such personal property when it may seem to him to be to the best interest of his estate to do so, and to re-invest the funds derived from same if such funds are not needed by him for the support and maintenance of testator's children.

It seems to be a reasonably well settled rule that "the character of a trust fund, whether personal or real, will remain the same, for the purpose of final distribution, whether invested by the trustee in real or personal property, except where the case is one of equitable conversion and that the property in trust fund should be treated as retaining its original character until it shall have come into the hands of one who is entitled to treat it as his own absolutely and for all purposes." Since the land here involved was purchased with proceeds from the sale of personal property the land is substituted for the funds and the trustee was fully authorized to deal with the land as though it had remained specifically personal estate and to administer same under the provisions of the will relative to personal property. Simmons v. O'Connor, Tex.Civ.App., 149 S.W.2d 1107; Magnolia Park Co. et al. v. Tinsley et al., 96 Tex. 364, 73 S.W. 5.

It is conceded by all parties that if the trustee has authority to sell the real estate involved it would follow that he would have the authority to execute a valid oil and gas lease. See Avis v. First National Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255 and authorities there cited. It is our holding that the trustee of the trust

estate created by the will of I. L. Martin had full authority to sell the personal property belonging to the trust estate and to reinvest the proceeds of such sale in real estate, which was done in this instance, and that his power and authority over the real estate so purchased remains the same as it was over such personal property before its sale, and therefore was fully authorized to execute and deliver the leases covering the land here involved, binding on all interested parties.

The other provisions of the judgment of the trial court fixing the interest as between the original defendants are not before us for review and we express no opinion as to their correctness. The only point before us being the question of the authority of the trustee under the will to execute a valid and binding oil and gas lease covering the land in controversy, and having concluded that such trustee had that power, (possibly upon a different theory prompting the judgment of the trial court) appellants' point is overruled and the judgment of the trial court is affirmed.