**Obie P. LEONARD, Jr., et al., Appellants,**

v.

**DELTA COUNTY LEVEE IMPROVEMENT DISTRICT NO. 2 et al., Appellees.**

**No. 8214.**

Court of Civil Appeals of Texas, Texarkana.

Feb. 5, 1974.

Vic Anderson, Jr., Shannon, Gracey, Ratcliff & Miller, Fort Worth, for appellants.

Hardy Moore, Paris, for appellees.

PER CURIAM.

This is a suit for writ of mandamus. Obie P. Leonard, Jr., R. W. Leonard, Margery Ann Hodges and Martha Jane Anthony, appellants (plaintiffs) brought suit against appellees (defendants), Delta County Levee Improvement District No. 2, O. O. Woodard, Roy Emerson and Goebel Templeton, individually and collectively as the Levee Improvement District's supervisors; Delta County Commissioners' Court, C. C. Oliver, J. L. Routt, H. D. Clark, Jr., Robert Anderson, Troy E. Kern, individually and collectively, as the Delta County Commissioners' Court, to require appellees to assess, levy or collect delinquent taxes or new taxes to pay off judgment

liens against the district, which liens were owned and held by appellants. Trial was before a jury, and the jury rendered a verdict in favor of appellees on all issues. The trial court entered its judgment that appellants take nothing and refused appellants' application for writ of mandamus. Appellants' motion for new trial was overruled and thereafter this appeal was duly perfected. Thirteen points of error are submitted for our consideration.

On July 23, 1919, the Delta County Commissioners' Court signed an order creating Delta County Levee Improvement District No. 2. Shortly afterwards, an election was held in which the voters of Delta County approved the issuance of bonds in the sum of One Hundred Twenty Thousand ($120,000.00) Dollars for the construction and maintenance of levees and other improvements in the district, and also approved the levying of a tax to pay the interest on the bonds and to provide a sinking fund for the retirement of the bonds at maturity. In the same year, the district issued bonds in the total sum of $120,000.00 in denominations of $1,000.00 each. Neither the principal nor the interest was paid on the bonds at maturity. Judgments were taken against the District by Elmer C. Smith and Fred F. Farrow on June 9, 1942, June 9, 1947, and January 15, 1951, in the District Court of Delta County for the respective sums of $35,022.17, $33,950.-00, and $25,459.25. The judgments were ultimately assigned to appellants.

There is no issue in the case about the validity of the various assignments or that abstracts of judgment were properly issued, recorded and indexed.

The key issues in the case are whether or not the judgments had become dormant, whether the various writs of execution had been "issued" within the meaning of Article 3773, Tex.Rev.Civ.Stats., and whether the doctrine of laches is applicable.

Article 3773, supra, provides the following:

"If no execution is issued within ten years after the rendition of a judgment in any court of record, the judgment shall become dormant and no execution shall issue thereon unless such judgment be revived. If the first execution has issued within the ten years, the judgment shall not become dormant, unless ten years shall have elapsed between the issuance of executions thereon, and execution may issue at any time within ten years after the issuance of the preceding execution."

There is no question but that executions were actually obtained in each case within ten years after the rendition of each judgment, and subsequent executions were obtained within ten years after the preceding execution.

The evidence is undisputed that in Cause No. 4224 in the District Court of Delta County, appellants obtained a judgment for $35,022.17 on June 9, 1942, and that proper issuance of writs of execution was obtained on July 7, 1950, and February 11, 1966. Since the undisputed proof shows that these two writs of execution were delivered into the hands of the sheriff and returned "nulla bona," a presumption arises that the officer performed his duty with reference to the two writs of execution. Carpenter v. Probst, 247 S.W.2d 460 (Tex.Civ.App. San Antonio 1952, writ ref'd). There is no evidence to the contrary. The remainder of the writs of execution in the three district court cases (Causes Nos. 4224, 4524, and 4738) are in dispute. The evidence in connection with each writ of execution is virtually identical. The writs of execution were delivered to the sheriff of Delta County with instructions to return them "nulla bona." In each instance, some small investigation was made as to whether or not the district had any property and, upon finding no property, the writs were returned "nulla bona." It is undisputed that the district did not own any property at any time when any of the writs of execu-

tion were delivered to the sheriff of Delta County. It is the settled law in this state that levee and imprisonment districts created under Sec. 59(a) of Art. XVI of the Texas Constitution and Statutes enacted thereunder are political subdivisions of the state, performing governmental functions, and as a matter of public policy are exempt from execution. Willacy Co. Water Control and Improvement Dist. No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936 (1944). It is therefore clear that execution cannot be employed as a method of *collecting* a judgment lien against the district in this case. However, Art. 3773, supra, is the only method provided by statute in Texas to keep a judgment from becoming dormant. The law requires that a writ of execution be issued to keep a judgment lien alive against a political subdivision even though it provides as a matter of public policy that the property of the district is not subject to execution to pay the judgments rendered against the district. (This is certainly a problem that needs legislative attention). In the instant case, even if the sheriff had found property belonging to the Delta County Levee District, he could not have levied execution upon the property, and the only return that he could have made upon the writ of execution would have been "nulla bona." We therefore hold that the writs were "issued" within the meaning of Art. 3773, Tex.Rev.Civ.Stats., and that such statute provided the only method in the instant case for precluding the judgments against the district from becoming dormant. The obtaining of the writ of execution from the clerk of the court, the placing of it in the hands of the local sheriff and his return of "nulla bona" within the prescribed times were the only requirements necessary to keep the judgment liens alive against the district, even though the judgments could not be *collected* by the use of the writs of execution. "In the instant case the writ was delivered to the officer for the only service that was possible and, under the circumstances, we think there was neither want of diligence nor lack of good faith." R. B. Spencer & Co. v. Harris, 171 S.W.2d 393 (Tex.Civ.App. Amarillo, 1943, writ ref'd).

The method for *collecting* judgments against political subdivisions exempt from execution is by writ of mandamus directing the political subdivision of the state to levy and collect sufficient taxes with which to pay the judgment or judgments when there is insufficient money on hand to pay the judgment debtors. City of Austin v. Cahill, 99 Tex. 172, 88 S.W. 542 (1905).

The duty to levy and collect taxes is a continuing one of the political subdivision of the state that has borrowed money through the issuance of bonds or other evidences of indebtedness, and that same duty exists to pay judgments validly obtained against the political subdivision. Laches is not an affirmative defense which may be asserted under circumstances such as those existing in the instant case. When valid judgments were obtained against the district, and those judgments were kept alive by the issuance of writs of execution within the times prescribed by Art. 3773, supra, then the dominant duty is that of the political subdivision to pay the indebtedness, and the subordinate duty is that of the owner of the indebtedness to bring a suit for mandamus to compel the district to levy and collect sufficient taxes to pay the indebtedness. The duty of the district to pay is continuing. The time of bringing the mandamus suit to collect the debt is at the election of the owner of the indebtedness. As long as the judgment or judgments do not become dormant, the doctrine of laches is not ordinarily available as an affirmative defense. It was particularly not available in the present case because there was no showing by the district that it had in good faith changed its position to its detriment as a result of the delay of appellants in bringing their suit for writ of mandamus. City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex. Sup.1964).

The trial court erred in failing to issue a writ of mandamus as prayed for by appellants. The judgment of the trial court is reversed and remanded with instructions to issue a writ of mandamus commanding appellees to assess, levy and collect delinquent taxes or new taxes sufficient to pay for judgment liens owned and held by appellants, plus interest and costs, within a reasonable time.